**UNITED STATES DISTRICT COURT**

**DISTRICT OF 4TH CIRCUIT**

U.S. DISTRICT COURT
DISTRICT OF MARYLAND
FILED
2017 MAY 31 PM 4:20
CLERK'S OFFICE
AT GREENBELT
BY ______ DEPUTY

**KELVIN DARREN REESE** )
) 
Plaintiff, )
v. )
) **Case No: CAD13-22462**
**STATE OF MARYLAND** )
**LARRY HOGAN,** *Governor* )
**BRIAN E. FROSH,** *Attorney General* )
**JOHN PAUL DAVEY,** *Judge* )
**PETER B. KRAUSER** *Chief Judge* )
**JOHN SLOWE** *Director D.C.S.E.* )
**MARY MURPHY** *D.C.S.E. Attorney* )
)
Defendants, )
**JOHN PAUL DAVEY, MARY MURPHY,**)

GJH 17 CV 1487

Plaintiff, as and for a Complaint against the above-named Defendants, set forth the following:

## *Statement of Complaint*

1. The STATE of MARYLAND maintains state laws and policies that are in conflict with the federal statutory injunction divesting states and officials from holding a disabled veteran individually culpable for their debt to their families as it pertains to a law under the Secretary of the Department of Veterans Affairs that affects the provision of benefits to veterans or the dependents or survivors of veterans.

2. The defendants have executed unilateral control over the sovereignty of the United States for the waivers to veterans and their families. While many actions taken may previously have been performed without intent, the clearly valid statutory injunction stripping states and officials of authority have been provided. By refusing to acknowledge the voided status the defendants are acting to continue the enforcement.

3. From the receipt of funds under Title IV-D, the State has waived immunity.

4. **Plain Language Legal Statute:**

> 38 U.S.C. § 511 - Decisions of the Secretary; finality (a) provides: "The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the

Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise."

38 U.S. Code § 5301(a)(1) - Nonassignability and exempt status of benefits: "Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 5301(a)(3)(A) – This paragraph is intended to clarify that, in any case where a beneficiary entitled to compensation, pension, or dependency and indemnity compensation enters into an agreement with another person under which agreement such other person acquires for consideration the right to receive such benefit by payment of such compensation, pension, or dependency and indemnity compensation, as the case may be, except as provided in subparagraph (B), and including deposit into a joint account from which such other person may make withdrawals, or otherwise, such agreement shall be deemed to be an assignment and is prohibited.

38 U.S.C. § 5301(a)(3)(C) - **Any agreement** or arrangement for collateral for security for an agreement **that is prohibited under subparagraph (A) is also prohibited and is void from its inception.**"

5. Thru negligence of proper due diligence to claim jurisdiction over veteran benefit decisions and by now acting to continue enforcing orders which have been voided by the U.S. Congress, the defendants are causing damage. Additional damages have been caused by failing to follow proper due processes and return unlawfully withheld funds.

## *Parties*

6. Plaintiff, KELVIN DARREN REESE is:

   a. an Honorably Discharged _VETERAN___ of the United States Air Force; and
   b. rated as 60% disabled by the Department of Veterans Affairs; and 100% disabled by The Social Security Administration.
   c. a citizen of the State of Maryland, currently residing in Prince George, County.

7. Defendant Hon. LARRY HOGAN:

   a. is the Governor of the State of MARYLAND, acting under the color of law; and
   b. in their official capacity, is the chief executive officer of the

State of Maryland; and

c. is responsible to ensure that the laws of the State are properly enforced; and

d. maintains an office in Annapolis, Maryland, in this district.

8. Defendant Hon. BRIAN E. FROSH

a. is the Attorney General of the State of Maryland; and

b. in their official capacity, is the Attorney General, the chief legal officer of the State of Maryland and the Maryland Department of Justice; and

c. is responsible to see that the laws of the State are uniformly and adequately enforced; and

d. maintains an office in Largo, Maryland, Prince George County, in this district.

9. Defendant Hon. JOHN PAUL DAVEY

a. is a Circuit Court Judge for the Prince George County Circuit Courts of Maryland; and

b. is vested with the judicial powers of the Circuit Courts by the state of Maryland; and

c. maintains an office in Prince George County, Upper Marlboro, Maryland, in this district.

10. Defendant Hon. PETER B. KRAUSER

a. Is the Chief Justice for the Court Of Special Appeals for the State Of Maryland; and

b. Is vested with the judicial powers of the Court Of Special Appeals by the state of Maryland; and

c. Maintains an office in Annapolis, Maryland, in this District.

11. Defendant MARY MURPHY

a. Is the lead attorney for Prince George County Division of Child Support enforcement; and

b. who is vested to make sure all Federal, State and local laws apply to all support cases in that county, and

c. Maintains an Office in Prince George County, Maryland, in this district.

## ***Jurisdiction and Venue***

12. This case raises questions under the Constitution of the United States where this Court

has extensively broad jurisdiction under 42 U.S.C. Sections 1983, 1985, 1986 and 1988, Title II of the ADA, 42 U.S.C. §§ 12131-12133, Section 504 of the Rehabilitation Act and Rule 57 of the Federal Rules of Civil Procedure and the Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. Sections 1331, 1343, 1356, 2201 and 2202.

13. Venue is proper in this Court pursuant to 18 U.S.C. 1965, 28 U.S.C. 1391(b)(1), (b)(2), (e)(1)(A) and (e)(1)(B) because all Defendants reside in this district. Venue is also proper in this Court because all of the events giving rise to the claim occurred in this district; the Defendants live in this judicial district; all Defendants are present and regularly conducts affairs in this judicial district.

14. The Petitioner has presented the clearly valid statute divesting authority. While a bankruptcy court clearly holds authority to enforce the statutory injunctions against actions without jurisdiction over bankruptcy decisions, the structure of a federal agency provisioning benefits provides the district courts hold the jurisdiction to enforce the statutory injunction. *Iannucci v. McDonald*, U.S. Court of Appeals Veteran Claims, Case No. 15-2879.

15. District Courts hold jurisdiction to intervene in a state court judgment, when the state proceedings were void ab initio; a void judgment being one which from its inception was a complete nullity and without legal effect. In re Audre Inc., 97 Daily Journal D.A.R. 57 at 61 (Jan. 5, 1998).

## *Introduction*

16. There has been much confusion over the issue of using veteran benefits within state support calculations. Much of this confusion has been the result of lack of knowledge and experience with veteran law, cultural discrimination, perception of the Domestic Federal Assistance scheme, the lack of diligence to research and declare jurisdiction to the courts.

17. For some individuals it does not make sense when a veteran explains they have a constitutional right to not be held culpable for the debt to their family. However, we all know it is the responsibility of the United States to care for both the veteran and family.

18. This appears to be a common ailment nationwide; failing to see the big picture and lost in the details thus willing to violate the law, act without authority and take unilateral action justified by skewed perception. These individuals have created the twisted concept: that a veteran claims a right to be a "deadbeat parent" and leave their child to survive on "welfare". This skewed perception must be corrected.

19. Nationwide a demand for a Socialism using social justice and not the lawful justice of due process has corrupted morals. Individuals demand federal benefits for those who have not earned the equalizing right to federal benefits through the sacrifice of civil liberties while in service to the country. By choosing not to sign the enlistment contract these individuals chose not to have a right. These individuals perpetuate a system to divert funds for the care of a veteran's family to pay for free college and other services.

20. People have forgotten "welfare" was created for the military, veterans and their families to provide support awards under the contractual/constitutional culpability of United States. These tax payers are in fact being the "deadbeats", refusing to pay these children their rightful support awards by placing the weight back on the broken shoulders of the veteran.

21. The Domestic Federal Assistance system is not "Socialism". These are social welfare programs with needs based eligibility criteria. These programs assist people who are disadvantaged. They are a vital safety net for the United States capitalist economy.

### *The Big Picture*

22. The Primary inducement to enlistment and agreement with a veteran is to ensure the special debt to provide for the support and welfare of a veteran and their family is removed from the broken shoulders of a veteran and assumed by the United States.

23. When a veteran is unable to participate in the economy, it is the United States obligation to provide Federal Benefit support awards. The exclusive purpose for the creation of what is called the Domestic Federal Assistance system was to fulfill this "Original Deal" of the Enlistment Contract.

24. The very purpose of adopting the Primary Inducement under the Constitution was to protect the veteran and their families' right to support awards by discharging the veteran of their debt to their family and then supplanting the obligation and culpability of the debt from the veteran to the United States. This debt to the veteran and their family is guaranteed under Section 4 of the Fourteenth Amendment.

25. It was Senator Wade who drafted the first sentence and stated: "This section of my amendment goes further, and secures the pensioners of the country", Cong. Globe, 39th Cong., 1st Sess. 2769 (1866). Adding, the motivation for this provision was to "do something to protect those wounded patriots who have been stricken down in the cause of their country", Id. Furthermore stating that he was "anxious to put the pensions of our soldiers and their widows

and children under the guardianship of the Constitution . . . ."Id.

26. It was Abraham Lincoln who informed the nation of the purpose of Section 4 of the Fourteenth Amendment; "To care for him who shall have borne the battle, his widow and his orphan" Abraham Lincoln, Second Inaugural Address; endorsed by Lincoln, March 4, 1865; Series 3, General Correspondence, 1837-1897.

27. Family is the most precious to veterans. Thus veterans held the common law practice within states to provide support awards to fulfill the debt to one's family higher than ANY state court can provide or enforce. This is why they ensured the welfare of their families is guaranteed by the Constitution instead. The debt to the family AND the veteran is guaranteed regardless if living together or separately and regardless if the veteran is alive or dead. At the heart of every veteran is generosity and commitment to care for all others.

28. During the "Great Depression" veterans again answered the call to help their fellow Americans. Veterans would help the country recover from the Great Depression by granting those without a constitutional right, access to some of their programs. To do this, the programs needed to be organized instead of scattered throughout the federal government. Additionally, payments in veteran benefits needed to be reduced so the funds could be shifted to the shared programs. Thus the 1933 Economic Act was created.

29. Since a veteran's family consists of civilians, these programs were easier to share under the law. Whereas the programs with a military specific eligibility requirements (e.g. Vietnam, Post 9/11, service connected disabilities...etc.) were placed under the original Veterans Administration. While there is some overlap today, majority of funds for the veteran fall under the Department of Veteran Affairs (VA) and most funds for the family fall under the Department of Health and Human Services (DHHS).

30. In spite of this shared nature of DHHS Programs, many have confused this split to mean DHHS programs are not for veterans and their families. However, the programs under both departments are for veterans and their families with well-established constitutionally protected rights.[1]

31. Many funds for DHHS are sent to the State as block funds to administrate the provisioning of the benefits to the families of veterans. An additional large gift of funds from the budget of veterans is provided to the states for assisting provide services to individuals in

[1] *Cushman v. Shinseki*, 576 f.3d 1290 (Fed. Cir. 2009).

need but who have no constitutional right nor signed the special enlistment contract.[2]

32. The creation of the Child Support Enforcement Act of 1975 was a response to many years of investigating individuals who abused the generosity of veterans by leaving their children abandoned when they were fully capable of caring for them. The purpose of the Child Support Enforcement Act was to protect the federal benefits for those without the ability to provide for their families from those who have the ability but refused.

33. During World War II, Congress had induced enlistment by promising to care for families of soldiers while away. 10 years after the war, the reports showed only 25% of benefits were going to veteran families and 35% shared with non-veteran families with an acceptable need. Congress had asked who the other 40% of beneficiaries were and the report answered.

> "The data on the status of fathers of individual children may be summarized as follows: Nearly two fifths of the children were found to be in need because their parents were estranged, with the father having either deserted or been divorced or separated from the mother."[3]

34. The Child Support Enforcement Act was created to prevent the dilution of funds intended for veterans and their families and those with an acceptable need. It is not intended to strip these funds from the very people who have a constitutional right to receive them.

35. Senator Wade's reasons for putting the protection of these support awards under the Constitution have come to realization, "We ought to do something to protect those wounded patriots who have been stricken down in the cause of their country, and put the security of their pension and their means of support beyond the power of wavering majorities in Congress, who

---

[2] See *San Antonio School District v. Rodriguez*, 411 U.S. 1, 37 (1973), in which the Supreme Court acknowledged the importance of public education but refused to accord it the status of a fundamental constitutional right; See *Lindsey v. Normet*, 405 U.S. 56, 74 (1972), where the Supreme Court held that housing was not a fundamental constitutional right; *Maher v. Roe*, 432 U.S. 464, 469 (1977) Medicaid regulations limiting first-trimester abortions to those that were "medically necessary." placed no obstacles in the pregnant woman's path to an abortion, and do not "impinge upon the fundamental right recognized in Roe."; See *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) "[A] State is under no constitutional duty to provide substantive services for those within its borders."; see also *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Jefferson v. Hackney*, 406 U.S. 535, 546-48 (1972); *Dandridge v. Williams*, 397 U.S. 471, 486-87 (1970).

[3] *Robert H. Mugge*, "Aid to Families With Dependent Children: Initial Findings of the 1961 Report on the Characteristics of Recipients", Social Security Bulletin, March 1963.

may at some time, perhaps, be hostile to the soldier."

36. While Senator Wade had the foresight to contemplate there would be individuals who "at some time, perhaps, be hostile to the soldier", he may not have imagined them acting without their congressional representatives. Today, this case comes forward because these individuals are acting unilaterally to usurp authority over the sovereignty of the United States because of their hatred of the soldiers and because they covet the earned right to federal benefits.

***The Legal History***

37. The issues presented here today are part of the 200 years of criminal history that are well documented in the rap sheets of the nefarious members of the legal community.[4]

> "As is usual under all governments when money is to be paid out to numerous individuals in the community, a class of people fastened themselves as parasites on the beneficiaries. The pension claim agent appeared early on the scene. Under pretense of assisting prospective pensioners, he soon reached a stage where he absorbed a large part of the benefit of the country's generosity. He was in very truth a blood-sucker on the pensioner, although posing as his friend."[5]

38. The arguments to use funds within state family law courts today are solely supported by the precedents of statutory language which was exposed by the U.S. Supreme Court as the core problem that enabled an Iron Triangle to grow within the original Veterans Administration.[6]

39. These arguments completely ignore the precedents and affirmations within the same rulings which held if congress corrected these problems, states would be prohibited by the statutory injunction. These arguments, intentional or not, ignore or omit key legislative changes and the simple fact that the language they rely on no longer exists.

40. The 1987 case of *Rose v. Rose*, 481 U.S. 619 (1987). was not overturned and is still good law. However, it was abrogated and laws have changed. Many cases have been heard by

---

[4] See in general, James D. Ridgway's "The Splendid Isolation Revisited: Lessons from the History of Veterans' Benefits Before Judicial Review", available at: http://www.bva.va.gov/docs/VLR_VOL3/3-Ridgway-TheSplendidIsolationPages135-219.pdf

[5] William Henry Glasson, Federal Military Pensions in the United States at vii-viii. (1918)

[6] Supra Ridgway note 3 at pages 186-189

the Supreme Court to inform Congress they did not write the laws correctly. Congress will abrogate these rulings and correct the laws.

41. During this time frame, the Supreme Court heard many divorce related cases dealing with the treatment of federal benefits and retirements, *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), *Ridgeway v. Ridgeway*, 454 U.S. 46 (1981), *McCarty v. McCarty*, 453 U.S. 210 (1981), *Rose v. Rose*, 481 U.S. 619 (1987), *Mansell v. Mansell* 490 U.S. 581 (1989). These are all good interpretive law but the language of law was changed dramatically as a result of the Court's interpretations.

42. Congress abrogated several cases because the Supreme Court identified the laws did not represent their true desires. When the Court ruled state family law courts lacked authority over retirement funds, Congress responded by abrogating the rulings; on railroad retirement with Pub. L. 98-76, tit. IV, s. 419(a)(3), 97 Stat. 938 (1983) and for military retirement with Public Law 97-252, Title 10 U.S.C. § 1408, (1983), the Uniformed Services Former Spouses' Protection Act. These changes to the law are not omitted by lack of diligence within the State adjudication.

43. Conversely, Congress never responded to interpretations of the Supreme Court which denied state courts authority over federal benefit support awards for social security or veteran benefits. Congress only responded to the single instance where the Court had interpreted the language to allow state courts authority over veteran benefit decisions in child support awards and the enforcement processes.

44. Many have confused the *Rose* case to be solely about family law. However, after reviewing the history it is clear this case was one of the straws that broke the camel's back when it came to the Iron Triangle that had formed within the Veterans Administration. The case had settled the 35 years of debates concerning enacting a formal adjudication scheme to force the VA to perform their duties. The debates came to a screeching halt because the Supreme Court had made it clear the VA had no legal obligation to care for the children of veterans.[7]

45. The Veteran Judicial Review Act[8] was passed to put in exclusive authority with federal

[7] *Rose v. Rose*, 481 U.S. 619 at 481 U.S. 620 (1987) "The VA is not obliged to participate in the state proceedings or pay benefits directly to appellee."

[8] Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988).

court oversight. The Department of Veteran Affairs Act[9] was passed to reorganize the existing Veterans Administration in hopes of squelching the internal criminal components. The American's with Disabilities Act[10] was passed to address 70 years of immoral treatment of disabled veterans in the medical system also addressing the atrocious treatment of all disabled Americans.[11] Finally, the statute of 42 USC 662 was repealed as scheduled.[12]

46. The idea that nefariously motivated attorneys would deliberately couch the legal fee regulated federal benefit system upon unregulated family law is of no surprise to those in the veteran law circles. The most prevalent schemes have revolved around legal fees.

47. The actions of nefarious individuals have clouded this issue. Less than diligent attorneys or those stressed for time could easily fall prey to the deceit. After all of the legislative changes to clarify the use of veteran benefits versus retirement several attorneys approached Congress under the guise of advocating for beneficiaries.

48. Marshal Willick and Mark Sullivan are attorneys who have worked under the umbrella of the American Bar Association specifically in the realm of military law and towards the goal of deregulation of fees. The U.S. Congress is not blind to the desires of the legal community for deregulating fees versus fictitious attempts to imply advocating on behalf of former spouses. Congress has directly confronted these attorneys regarding their intentions.

49. In 1990, Mr. Willick and Mr. Sullivan testified to Congress at the Subcommittee on Military Personnel and Compensation, attempting to disguise their deregulation intentions behind former spouse advocacy. There was a great deal of response to this, especially to the more brazen Mr. Willick. George Tate, Executive Director, American Retiree Association wrote correspondence to Chairwoman Hon. Beverly Byron citing conflicts of interest of client fee agreements and "*a direct and substantial financial interest in the outcome of legislation*".

50. Hon. Congressman Robert Dornan asked Hon. Congresswoman Byron for inclusion of Mr. Tates letter into the record. Congressman Dorman further correlated Mr. Willick's appearance on behalf of the American Bar Association with Mr. Willick's passing of a Nevada

---

[9] Department of Veterans Affairs Act, Pub. L. No. 100-527, 102 Stat. 2635 (1988).
[10] Americans with Disabilities Act, Pub. L. 101-336, 104 Stat. 328 (1990)
[11] *Ridgway* at 186, Supra note 3, Tin 1921 the American Legion publicized "stories of shell-shocked veterans sent to hospitals for feeble-minded children, where they were forced to sit on infants' chairs, and of tuberculosis patients sent to marshy districts detrimental to their health."
[12] 42 U.S.C. § 662 - Repealed. Pub. L. 104–193, title III, § 362(b)(1) , 110 Stat. 2246, Aug. 22, 1996

law that was later rejected by the Nevada Assembly and his imbedded and targeted advertisements for legal services.

51. In the transcript, Mr. Dorman sums up his comments in Mr. Willick's face quite well, "*I don't even know what constitutes ambulance chasing any more, but it seems to me that since he wouldn't answer questions about some of the lawyer's fees are paid that maybe your letter is fair commentary on his appearance.*"

52. Today, many nefariously motivated attorneys will assert 42 U.S.C. § 659 grants states authority to establish debts under the definition of "remuneration for employment" additionally asserting authority to garnish directly from individuals.

53. However, The Supreme Court clarified 42 U.S.C. § 659 solely grants states authority in legal processes in the nature of a garnishment and solely to compel payment from the United States; NOT authority to establish the debt to the family and NOT garnishment from the veteran directly. [13]

54. While social security funds and veteran benefits received under a waiver of retirement may be compelled from the federal government, once in the hands of a beneficiary they cannot. Because these two types of funds have a connection to a form of retirement Congress has solely authorized use in enforcement and not in the establishment of a debt to the family.

55. It is well and rightfully perceived by the veteran community that family law attorneys see veterans as nothing short of "cash cows". However, in the case here, the state is also profiting.

56. By changing the character of federal benefits to income, the funds are successfully laundered.[14] Thus, once placed into the hands of a dependent beneficiary, these funds are used in DHHS eligibility processes to deny benefits. The state profits from the receipt of the federal benefits intended to provide for the majority of the family's welfare. Additionally the state receives incentives for child support enforcement.[15]

---

[13] *Rose v. Rose*, 481 U.S. 619, 481 U. S. 635 (1987) "But § 659(a) does not refer to ***any*** legal process… The term 'legal process' means any writ, order, summons, or other similar process in the nature of garnishment. . . issued by [a state court] . . . and . . . ***directed to, and the purpose of which is to compel, a governmental entity***" (original emphasis included)

[14] *McCarty v. McCarty*, 453 U.S. 210 (1981, "*In re Hisquierdo, 133 Cal.Rptr. 684 (2d Dist.1976). The court, noting that, under this Court's Supremacy Clause cases, Congress has the power to determine the character of a federally created benefit*"

[15] 42 U.S.C. §658

57. There is a "basic principle of the VA claims process that claims will be processed and adjudicated in an informal, nonadversarial atmosphere, and that to ensure a just outcome under this rubric VA will assist claimants in many ways."[16] Family law is arguably the most adversarial. Given the combative nature of these situations, "cash cows" appears less appropriate and "dog fights" a more apt analogy.

58. The veteran and their family are the dogs thrusted into a family law court pit. They are forced to fight to the death over scraps of veteran benefit food held by the judge above their heads. Attorneys poke and prod the two parties to agitate the fight, placing their bets to win a fee portion of the scraps. By focusing the dogs on each other, they cannot see who is really causing all of their suffering. Finally, the state house always wins by keeping the largest portion.

59. Much of the nefarious intentions is designed to stigmatize and vilify veterans as denying their children support from benefits under the VA. Depending on the program and decisions of the VA, some awards are solely for the dependents with none for the veteran.[17] There is no history of a veteran arguing their dependents are not entitled to federal benefits; even in the case of *Rose*.

60. Constant statements attempting to justifying unauthorized benefit decisions because benefits are for the veteran and family are diversionary. These individuals seek to stigmatize programs under DHHS as programs that were never meant for the care of veterans and their families but solely to provide handouts for the failures of society. These people chastise the veteran as attempting to avoid their family debt instead of seeing the veteran as having guaranteed the payment.

61. These individuals demand "Social Justice". This term was created by individuals who believe it is justified to bully and commit criminal acts in order to coerce others into silencing protected rights outside the courts. It is used to justify criminal behavior as acceptable means to their ends. When the law and Constitution protect an individual from being punished using lawful justice of due process, the term "Social Justice" has been created as an attempt to relabel the term "Terrorism"[18] and market rioting, violent attacks of people and shooting of

---

[16] *Evans v. Shinseki*, 25 Vet. App. 7, 14 (2011), *EF v. Derwinski*, 1 Vet. App. 324, 326 (1991)

[17] The programs Title 38 Chapter 35, the Death and Indemnity Coverage (DIC) and CHAPVA programs are solely for dependents.

[18] 18 U.S.C. § 2331 (5) the term "domestic terrorism" means activities that— (A) involve acts

law enforcement as acceptable and even necessary.

62. Social Justice Warriors are demanding the usurping of authority and unilateral action over the sovereignty of the United States solely to avoid the lawful justice of due process. These decisions for dependent benefits need to be made but only by authorized agencies in authorized settings.

63. The concern is these decisions must be made in non-adversarial conditions and under strict regulations of fees and thus a matter of subject matter jurisdiction. The veterans and their dependents have due process means to force the VA to make payment to these children of a proper amount. Social Security requires direct payments be sent to person with physical custody of a dependent. The question is not if funds are for dependents but asks who has the authority to make and review these benefit decisions.

***Legal Mechanics***

64. The legal mechanics and process of this inducement within enlistment agreement are very similar to another agreement where individuals request to no longer be held culpable for standard debts. The same processes within bankruptcy are part of the benefit processes.

65. A bankruptcy is a standard agreement with the United States, authorized when warranted, to no longer hold a person culpable for standard debts, such as credit cards or car loans. When the federal government makes this agreement, a statutory injunction is in place to prohibit states from holding individuals culpable for these debts and restricts the adjudication of these debts to authorized agencies only, 11 U.S.C. § 524(a). However, the debt to the family is not a standard or simple debt and requires a special more extensive agreement.

66. Veterans sign a very special enlistment agreement. The enlistment agreement guarantees a constitutional right to apply for a special bankruptcy agreement to become indemnified of their debt to their family.[19] Unlike a bankruptcy which requires no sacrifice of the individual, a veteran has served the country and sacrifice their rights while serving their country.

67. Members of the military do not have a right to bear arms. They are told to pick up a

---

dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended— (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping;

[19] Thus veterans and their families have a property right in their applications to benefits. *Cushman v. Shinseki*, 576 f.3d 1290 (Fed. Cir. 2009).

gun and do not have a right to say "No". When told to put the gun down, they do not have the right to say "No". When they are told to sacrifice their lives by running into a battle, they do not have a right to say "No". This is because every single member of the military has sacrificed their right to life. Acts of heroism are cases where a person performs extraordinary feats under presumptive orders to look past the human instincts of self-preservation and do their duty.

68. When warranted by eligibility and the initial decision to award benefits has been made, the fulfillment of their enlistment contract with honorable service provides they will no longer be held culpable for the debt to their family. The statutory injunction within 38 U.S.C § 5301 at (a)(3)(C) isolates the adjudication authority of the debt to the family, voids any unauthorized actions to establish or enforce this debt and prohibits states from holding the veteran culpable the moment the veteran applies.

69. Again however, this is a special debt and agreement. Unlike a bankruptcy where standard debts are left unpaid, this special agreement guarantees the debt will be fulfilled. This special agreement ensures the United States assumes the debt, is culpable and uses the programs within the Domestic Federal Assistance system to provide federal benefit support awards to the families AND the veteran.

70. Within the strict mechanical functions of the courts, this agreement is a business exchange agreement of "service for indemnity". The veteran serves 8 years, in exchange, the veteran receives indemnity and the United States waives indemnity to guarantee payment of the debt. However, it is a basic moral principle that the sacrifices of civil liberties of servicemembers is immeasurable in comparison to the benefits received in exchange. This is because freedom is not free and the price servicemembers pay includes the price of freedom for all Americans.

***Reconciliation of Rose and Wissner***

"Because we decide that the Former Spouses' Protection Act precludes States from treating as community property retirement pay waived to receive veterans' disability benefits, we need not decide whether the anti-attachment clause, § 3101(a), independently protects such pay. See, e.g., *Rose v. Rose*,481 U. S. 619

(1987); *Wissner v. Wissner*,338 U. S. 655 (1950)."[20]

71. While many of the cases discussed were about family law, the *Rose* case was more about the Iron Triangle formed within the VA. There was no need in *Mansell* to appear as chastising the states for doing the VA's job, when the VA had failed under corrupt influences. By affirming both *Rose* and *Wissner*, basic legal precedent for both processes of establishing a debt and enforcing that debt are held; with jurisdiction one can, without jurisdiction one cannot.

72. The Supreme Court of the United States has made clear with the ruling of *Rose v. Rose* 481 U.S. 619 (1987), that states required jurisdiction consent explicitly stating to be authorized "notwithstanding" the Nonassignability statute to withhold funds directly from a veteran. The Court held this language to exist under 42 U.S.C. § 662.

73. The Supreme Court then made clear that without consent to withholding "As the Court apparently recognizes [unanimously], albeit grudgingly, under *Wissner v. Wissner*, 338 U. S. 655 (1950), the order that appellant pay over a portion of his veterans' disability benefits on pain of contempt constitutes a 'seizure' of the benefits", *Rose v. Rose* Page 481 U. S. 645, thus conflicts with federal law, is preempted under the Supremacy Clause and therefore state court orders void from inception.

74. While the language of 38 U.S.C. § 3101 was recodified as 38 U.S.C. § 5301 by the Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, 105 Stat. 378 (1991), the statute of 42 U.S.C. § 662 was deliberately repealed by Congress with Pub. L. 104–193, title III, § 362(b)(1) , 110 Stat. 2246, Aug. 22, 1996.

75. Furthermore, as demonstrated in the case of *Rose v. Rose* Page 481 U. S. 645 prior to determining if an enforcement order of a debt is void from inception, the process of establishing that debt must also be reviewed to determine when the statutory injunction takes effect. Thus the Court needed to assess if the child support debt created by state court judgement was also void from inception.

76. Because Congress repealed consent to withholdings and garnishment, not much further discussion over the authority to establish the debt is needed. "Compare *Hisquierdo* [*Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979)], 439 U.S. at 439 U. S. 584 (***to prohibit garnishment is to prohibit division of property***); *Wissner v. Wissner*,338 U. S. 655 (1950)

[20] *Mansell v. Mansell* 490 U.S. 581. Footnote 6

(same)." *Mansell v. Mansell* 490 U.S. 581 at 490 U. S. 590 (1989) (emphasis included). However, this is a special bankruptcy type agreement thus the authority to establish ANY debt against the federal benefits and the application of the injunction should be addressed.

77. The statutory injunction section enjoins those without authority from any actions and use of funds. This injunction also enjoins those entrusted with authority from performing actions or using funds in a way not specifically authorized by law. Thus safeguards the adjudication authority of benefits and prohibits unlawful use.

78. 38 U.S.C. § 3101[21] is an anti-corruption statute which includes a statutory injunction. The purpose of the agreement is to remove the special debt of the family from the veteran and additionally provide the veteran a support award as well. Thus protects against any claim of creditors or the family, constitutionally guaranteeing the welfare means of the veteran.

79. Mechanically, the moment the claim is accepted by the VA is the moment adjudication authority is isolated. The moment the VA makes the decision the veteran is disabled and has lost the ability to fulfill their debt, the veteran is discharged of their debt to their family and themselves. All claims by the family and veteran for financial support must be directed to the United States. Because the veteran's agreement with the United States includes payment of these debts, the statutory injunction for this agreement is more extensive to protect these funds from any other claims, including standard creditors.

80. The opinion that Congress had not shown intent to "to protect the veteran against claims by his family" was profanely flawed. The very purpose of the enlistment agreement and Constitutional protection is to operate as a special bankruptcy addressing the special nature of the debt to the family. The primary purpose of the statutory injunction is to prohibit outside entities from establishing or enforcing the debt. Thus the opinion was found to have no weight.

81. Moreover, this opinion demonstrated the lack of respect for the special nature of the enlistment contract where the individual is required to serve in the military and make "immeasurable sacrifices". Thus the opinion was found offensive.

82. The Court's connection of bankruptcy processes to the veteran benefit processes is merely mechanical. Relying on additional language used to protect a veteran from all other potential claims showed disrespect towards the special sacrifices required of a veteran and ignored the purpose of the agreement. The Court found this opinion both having no weight and

---

[21] Currently 38 U.S.C. § 5301

offensive. Consequently the opinion was admittedly held "disdained" by the Court.[22]

83. The Court reaffirmed *Wissner v. Wissner, 338 U. S. 655 (1950)* that states are prohibited from establishing the debt to the family on the basis it had been discharged and violated the statutory injunction.

84. Instead, the Court explored the jurisdiction authority for provisioning the federal benefit support awards. Under bankruptcy law, the statutory injunction does not apply against entities authorized to adjudicate bankruptcy decisions. If Congress authorized states to make or review federal bankruptcy decisions, under 28 U.S.C. § 1334(a), the state would not be in conflict with the statutory injunction performing authorized bankruptcy functions. The purpose of the injunction here is to protect adjudication authority and prohibit those without authority from adjudicating specific debts.

85. Therefore the Court held the state ability to use funds as a matter of jurisdiction over veteran benefit decisions, under the previous 38 U.S.C. § 211. The Court explained, if the state had jurisdiction to make veteran benefit decisions, the use of federal benefits as income could be construed as the states means of integrating a benefit decision into local existing processes. Otherwise, the States are prohibited from changing the character of federal benefits.[23]

86. The Supreme Court identified the process of Apportionment;[24] where a decisions of "who gets how much" of an award is made for the veteran and dependents. The operation of pretending federal benefits were income could thus be construed as performing the authorized benefit decision processes of Apportionment.

87. The U.S. Supreme Court explained the deficiencies of the previous language in 38 U.S.C. § 211 that authorized the state to make this benefit decision. The Supreme Court reconciled with the 1950 ruling of *Wissner*[25] and affirmed, if the VA had exclusive jurisdiction over benefit decisions, the state would be in conflict with the anti-corruption scheme of

---

[22] "I would rest this conclusion, however, on a ground that the Court disdains", *Rose v. Rose*, 481 U.S. 619 at 481 U.S. 636 (1987); "Disdain"- dis·dain /disˈdān/ consider to be unworthy of one's consideration, to pour scorn on, regard with contempt, sneer at, sniff at, curl one's lip at, look down one's nose at, look down on.

[23] *McCarty v. McCarty*, 453 U.S. 210 (1981) quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), "In re *Hisquierdo*, 133 Cal.Rptr. 684 (2d Dist.1976). The court, noting that, under this Court's Supremacy Clause cases, Congress has the power to determine the character of a federally created benefit"

[24] Previously 38 U.S.C. § 3107, currently 38 U.S.C. § 5307

[25] *Wissner v. Wissner*, 338 U. S. 655 (1950)

enacted Nonassignability statutes[26] and supremacy would hold *a fortiori* as threatening grave damage to the clear and substantial federal interest to care for a veteran and their families.[27]

88. Subsequently, the language of 38 U.S.C. § 211 was amended by the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988)[28].The U.S. District and Circuit courts are in agreement and have explained in detail how Congress completely addressed these deficiencies with new language for exclusivity and broad scope of benefit decisions.[29] With the 9th Circuit specifically addressing the exclusive authority of the Apportionment process, *Belton v. Department of Veterans Affairs* 107 F.3d 14 (9th Cir.1997);

89. The U.S. Congress expressly stated the intent to overturn the judicial precedent of *Rose v. Rose*, 481 U.S. 619 (1987) that had construed the language of 38 U.S.C. § 211 to permit state courts to make VA benefit decisions by divesting states of jurisdiction with the enactment of the Veteran Judicial Review Act. H.R. Rep. No. 100-963, at 19-22 (1988). Congress then equally explained their exclusivity intent for the review of these decisions at 20-21 and 27.

90. Over the years the Department of Veterans Affairs has approved and published over 70 articles on their web site explaining the "exclusive jurisdiction" of the Department of Veteran Affairs over veteran benefits decisions and review by the U.S. Courts above them. Many articles are written by the leaders in the Veteran Law community and members of the Veteran Board of Appeals, such as James D. Ridgeway,[30] Michael P. Allen,[31] Terrence T. Griffin and

---

[26] Previously 38 U.S.C. § 3101, currently 38 U.S.C. § 5301

[27] "in no area has the Court accorded Congress greater deference than in the conduct and control of military affairs. See *Rostker v. Goldberg*, ante at 453 U. S. 64-65. Thus, the conclusion that we reached in *Hisquierdo* follows a fortiori here", *McCarty v. McCarty*, 453 U.S. 210, 453 U. S. 232, 233 (1981).

[28] 38 U.S.C. § 211 was recodified under the Department of Veteran Affairs Codification at 38 U.S.C. § 511

[29] *Henderson v. United States*, No. 14-15194 (**11th Cir.** 2014); *Anestis v. United States,* 749 F.3d 520 (**6th Cir**.2014); *Beamon v. Brown* 125 F. 3d 965 (**6th Cir**.1997); *Larrabee, by Jones v. Derwinski,* 968 F.2d 1497 (**2d Cir**.1992); *Hicks v. Veterans Administration,* 961 F.2d 1367, 1370 (**8th Cir**.1992), *Zuspann v. Brown,* 60 F.3d 1156 (**5th Cir**.1995); *Hanlin v. US*, 214 F.3d 1319 (**Fed. Cir**. 2000); *Belton v. Department of Veterans Affairs* 107 F.3d 14 (**9th Cir**.1997); *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1016 (**9th Cir**. 2012); *Freestone v. Blessing*, 116 F.3d 412 (**9th Cir.** 1997); *Turner v. United States*, 501 Fed. App'x 840, 843 (**10th Cir.** 2012); *Johnson v. Dept. of Veterans Affairs*, 09-7054 (**10th Cir.** 2009).

[30] Professorial Lecturer in Law at the George Washington University Law School (GWU) and an attorney with the United States Court of Appeals for Veterans Claims (CAVC)

[31] Professor of Law, Stetson University College of Law; B.A., 1989, University of Rochester;

Thomas D. Jones.[32]

91. After the repeal of 42 U.S.C. § 662, the Department of Veterans Affairs sent policy through the Office of Child Support Enforcement under the Department of Health and Human Services providing clear instruction on how states may participate in the Apportionment process by providing recommendations for the decisions controlled exclusively by the VA.[33]

92. Congress has positively required by direct enactment that states be deprived of benefit decision and review jurisdiction and that state law be preempted.[34] All three branches of the federal government have explained the exclusive jurisdiction and control over the sovereignty of the United States specific for waivers to veterans and their families to Title 38 benefits. The statute, case law, Congressional statements of intent and administrative doctrine make the absence of all jurisdiction clear these state court judgements and orders are **void ab initio**.

93. Additionally, Congress has added new identification tags to the Automated Check Handling System with the new regulations, allowing banks to now identify protected federal benefits and make clear the state court judgement is void, 31 CFR Part 212 (last visited 18 June 2013).

94. The bank, a privately owned corporate entity, can thus respond to these state courts by respectfully refusing to comply with a void state court order. Congress has voided the orders by statute. The bank does not require a court to perform the action. State courts are merely notified and required to cease enforcement.

95. These new regulations have greatly helped prevent void state court orders from unlawfully depriving people of their liberties and property. Because states are forcing veterans to surrender funds in the court 38 § 5301(a)(3)(C) must be asserted in a court. This is very similar in function and process of declaring the protections of 11 U.S.C. § 524(a) in a bankruptcy. Where action by the federal courts may be necessary to enjoin states from

---

J.D., 1992, Columbia University School of Law.

[32] Mr. Griffin and Mr. Jones are attorneys with the Board of Veterans' Appeals, Department of Veterans Affairs.

[33] U.S. Department of Health and Human Services IM-98-03, Financial Support for Children from Benefits Paid by Veterans Affairs, Available at: https://www.acf.hhs.gov/css/resource/financial-support-for-children-from-benefits-paid-by-veterans-affairs

[34] 38 U.S.C. § 211 was recodified as § 511 by the Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, 105 Stat. 378 (1991). We will refer to the pre-VJRA provision as § 211 and the post-VJRA provision as § 511.

enforcing void judgements and enforcement orders for debts that have been discharged.

96. Congress, the Department of Veteran Affairs and the U.S. Treasury working together supplemented the regulations explaining this requirement by providing this statement:

> "an individual who receives VA payments can still challenge in court the garnishment of those payments for child support obligations and assert the protections of 38 U.S.C. § 5301(a) in the event a State child support enforcement agency serves a garnishment order on a financial institution". (31 CFR Part 212)(last visited 18 June 2013), Garnishment of Accounts Containing Federal Benefit Payments: Final Rule Frequently Asked Questions.[35]

97. To ensure the Supreme Court's ruling on 42 U.S.C. § 659 was clear that VA Compensation funds such as the funds received by the Petitioner were not authorized to be garnished the U.S. Treasury and VA provided this additional statement:

> "Specifically, federal payments subject to garnishment by child support enforcement agencies under 42 U.S.C. 659 are limited to payments based on remuneration for employment. This does not include VA payments other than those representing compensation for a service-connected disability paid to a former member of the Armed Forces who is in receipt of retired or retainer pay and who has waived a portion of the retired or retainer pay in order to receive such compensation."[36]

98. All three branches of the U.S. Government have been abundantly clear that the sovereign indemnity for decisions under Title 38 are exclusive to the United States.

***COUNT ONE***

99. Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth here.

100. On September 9th 2014, the Petitioner in state hearing with Judge John Paul Davey

---

[35] U.S. Department of Health and Human Services IM-98-03, Financial Support for Children from Benefits Paid by Veterans Affairs, Available at: https://www.acf.hhs.gov/css/resource/financial-support-for-children-from-benefits-paid-by-veterans-affairs

[36] Garnishment of Accounts Containing Federal Benefit Payments: Final Rule Frequently Asked Questions" (31 CFR Part 212)(last visited 18 June 2013) Available at: www.fiscal.treasury.gov/fsservices/gov/pmt/eft/regulations/31CFR-part212-faq-questions.htm,

presented he was disabled and that his federal source of income was veterans benefits a protected under 38 U.S.C. 5301.

101. At the conclusion of the hearing Judge Davey, created a child support award and calculated arrears noting he computed the Petitioner's veteran benefits as income thus making a veteran benefit decision.

102. On April 4th 2016 Mary Murphy Lead D.C.S.E. (DHR) had another DHR attorney refuse in open court to present to the court the protection of veteran benefits forcing the Petitioner to act pro se on the matter.

103. On April 19th, 2017, the Petitioner filed a Motion in Limine which notified the court and prosecution that the September 9th 2014 Judgement was voided by the U.S. Congress. This motion cited, and fully quoted the statutory language for the jurisdiction of 38 U.S.C. sect. 511, the Nonassignability statute of 38 U.S.C. sect. 5301(a)(1) and the statutory injunction of 38 U.S.C. sect. 5301(a)(3)(C).

104. On June 1st 2015 Judge Davey arrested the Petitioner for contempt for failure to pay using the veteran benefits an imprisoned the Petitioner for protected veteran benefits.

105. The Defendants under the color of law and in the face of clearly valid statute are responsible for actions of false imprisonment, extortion, for the demanding the surrender of funds under an illegal seizure where failure to comply included unlawful confinement and imprisonment.

106. The discriminatory actions and neglect violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, both on their face and as applied to Plaintiffs.

107. The Defendants act to take away federal relief explicitly from people who have a constitutional right but not from people who receive relief without a constitutional right.

108. The policies and actions of the Defendants pretend the Domestic Federal Assistance of VA Compensation, (Catalogue of Domestic Federal Assistance, ID. No. 64.109 Veterans Compensation for Service-Connected Disability) are income within calculations to hold individuals accountable for their debts to their families. Whereas the state does not use as income any of the funds provisioned by the State under receipt of Title IV-D to individuals who do not hold a constitutional right.

109. The Defendants treat individuals with a special constitutional right to federal assistance

for their welfare as less worthy than individuals who do not hold this special right.

110. The United States Constitution's guarantee of equality under the Fourteenth Amendment "must at the very least mean that a bare (legislative) desire to harm a politically unpopular group cannot justify disparate treatment of that group." *United States v. Windsor*, 570 U.S. —, 186 L. Ed. 2d 808, 827 (2013).

111. The actions against the Petitioner "demean" veterans and instruct all state officials, and indeed all persons with whom the veteran interact, including their own children, that veterans are "less worthy" than individuals who chose not to complete the enlistment contract. Id., 186 L. Ed. 2d 830.

112. The disadvantages the defendants have imposed on veterans in receipt of domestic federal assistance create disapproval or animus against a politically unpopular group.

## *COUNT TWO*

113. Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth here.

114. The discriminatory actions and neglect violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, both on their face and as applied to Plaintiffs.

115. VA Compensation is provided on a combined rating system of disability denoted by a percentage of the "loss of ability to work" aka loss of ability to participate in the economy. This is a disability based means testing.

116. Financial Means Testing is a method of determining a person has not participated or failed to when participating in the economy.

117. The Defendants solely recognize federal prohibitions for financial means testing.

118. The Defendants recognize a person born with a disability and receiving funds from Supplemental Security Income program where financial means testing is included in the eligibility processes.

119. The Defendants recognize a person disabled from non-service connected injuries and receiving funds from Supplemental Security Income or the VA Pension programs where financial means testing is included in the eligibility processes.

120. A veteran having lost a percentage of their ability to participate in the economy is thus provided compensation to equalize them to any other individuals not suffering from the vastly more complex nature of military injuries and multiple injuries.

121. This is similar in nature when the average person receives Supplemental Nutrition Assistance Program funds (SNAPS), and where an individual with higher physical needs such as a pregnant woman would be additionally provided benefits under the Women and Infant Children program (WIC). The WIC benefits compensate for the physical condition making a person equal to those solely needing SNAP's. If the state treated WIC and VA Compensation equally, they would use the WIC funds as income.

122. The Defendants do not recognize individuals where the disability was incurred in service to the United States, thus targeting the discrimination at this specific set of disabled individuals.

123. The United States Constitution's guarantee of equality under the Fourteenth Amendment "must at the very least mean that a bare (legislative) desire to harm a politically unpopular group cannot justify disparate treatment of that group." *United States v. Windsor*, 570 U.S. —, 186 L. Ed. 2d 808, 827 (2013).

124. The actions against the Petitioner "demean" persons who incurred their injuries under the orders of the American people and instruct all state officials, and indeed all persons with whom the veteran interact, including their own children, that persons injured in service to the country are "less worthy" than individuals injured of their own accord. Id., 186 L. Ed. 2d 830.

125. The disadvantages the defendants have imposed on veterans in receipt of domestic federal assistance create disapproval or animus against a politically unpopular group.

## *COUNT THREE*

126. Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth here.

127. Defendants' enforcement of discrimination are acts taken individually and under color of state law.

128. Such conduct deprives Plaintiff of numerous rights secured by the Due Process, Equal Protection Clauses of the Fifth and Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

## *COUNT FOUR*

129. Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth here.

130. 42 U.S.C. § 1985 (3) provides a civil cause of action for any person who is injured in

his person or property by reason of "two or more persons in any State or Territory conspir[ing] or go[ing] in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."

131. Plaintiff alleges that the defendants individually conspire for the common goal to deny the Plaintiff's civil rights on the basis of disability and military service and from securing the Plaintiff's equal protection of rights to liberty and property under the law.

## *COUNT FIVE*

132. Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth here.

133. 42 U.S.C. § 1986 provides that "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented."

134. Plaintiff alleges the Defendants are intentionally neglecting to notify proper authorities or to act in any fashion to address the issue or act in any other capacity to prevent or aid in preventing violations. The Defendants have remained silent on the violations of rights and loss of the Plaintiff's property.

## *Conclusion*

135. The Supreme Court has held, if jurisdiction of benefit decisions is exclusive, states are prohibited and the statutory injunction applies.

136. All U.S. Circuits have agreed, benefit decision jurisdiction is exclusive to the new Department of Veterans Affairs and review is exclusive to the U.S. Courts of Appeal of Veteran Claims, the U.S. Court of Appeals for the Federal Circuit and the Supreme Court of the United States.

137. The Supreme Court has held without federal statute granting consent to withholding "notwithstanding" the Non-assignability statute, state courts are barred from

garnishing the veteran directly or holding them in contempt for failure to pay.

138. The Defendants are in violation of the statutory injunction.

WHEREFORE, Plaintiff respectfully request judgment in this action as follows:

139. Declaratory statement that the precedent of the previous language of 42 U.S.C. 662 by the Supreme Court in *Rose v. Rose,* 481 U.S. 619 (1987), which held:

> "A state court has jurisdiction to hold a disabled veteran in contempt for failing to pay child support, even if the veteran's only means of satisfying this obligation is to utilize veterans' benefits received as compensation for a service-connected disability."

has been abrogated by the U.S. Congress by the repeal of 42 U.S.C. 662; that without federal language which grants consent to withholding notwithstanding 38 U.S.C. § 5301, the precedent of the Supreme Court holds the order that appellant pay over a portion of his veterans' disability benefits on pain of contempt constitutes a 'seizure' of the benefits", *Rose v. Rose* Page 481 U. S. 645, thus conflicts with federal law, is preempted under the Supremacy Clause and therefore state court orders void from inception under the statutory injunction; and,

140. Declaratory statement reaffirming, *Mansell v. Mansell* 490 U.S. 581 (1989), *Rose v. Rose*, 481 U. S. 619 (1987) and *Wissner v. Wissner*,338 U. S. 655 (1950)." That States are prohibited by the statutory injunction of 38 U.S.C. § 5301(a)(3)(C) from establishing or enforcing a debt to the family as it pertains to "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."

141. Declaratory statement that the precedent of the previous jurisdiction language of 38 U.S.C. 211 by the Supreme Court in *Rose v. Rose,* 481 U.S. 619 (1987), which held:

> "[S]tate courts to authorize an award of disability benefits as child support, is not preempted under the Supremacy Clause of Article VI, since it does not conflict with federal law."

has been abrogated by the U.S. Congress through the enactment of the Veteran Judicial Review Act of 1988; that under this broad and exclusive jurisdiction scheme the precedent of the Supreme Court holds that without benefit decision authority states are prohibited from considering funds as income in state family

law courts, in conflict with the statutory injunction of 38 U.S.C. § 5301(a)(3)(C) as it pertains to "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."; and,

142. Treble Damages; and,

143. Compensatory damages of Two Hundred Thousand Dollars ($200,000.00); and,

144. "I survive solely on Domestic Federal Assistance".

a. I was illegally incarcerated by the State of Maryland and told if I don't pay $5000.00 to Child Support Enforcement I was to remain in jail indefinitely (JUNE 2015 PRINCE GEORGE COUNTY JUDGE JOHN PAUL DAVEY CONFINED ME TO PRINCE GEORGE COUNTY SHERRIFF'S DEPT. AFTER THE CONFISCATION OF MY SOCIAL SECURITY DISABILITY BENEFITS). While Imprisoned I went through physical withdrawals from medication that could have killed me. I suffer with asthma and the Sheriffs 'threw me in a van with no windows and turned the heat up to high while the outside temperature was ninety-six degrees (96) I was left in the van laying on the floor with my mouth pressed to the door trying to get air. All of my asthma medicine was confiscated, I felt like I was about to die. I felt mentally tortured for being a lawful citizen just wanting equal protection under the law for Veterans from the Country I swore to pay the price with my life. While in Prison late at night I was attacked because of the severe pain I was in from my medical condition .

b. My Biological Children were Taken from me although I was not found to be unfit. They were taken because I am prescribed pain medicine to deal with my service connected issues. They were Given to a Non USA Citizen who is not their Biological Parent. This Individual was Allowed to Steal my Federal Identification Documents along with My USA Citizen Children's Documents. A direct Violation of Immigration Law (see attached Documents ).

c. My Federal Assistance income was Drastically Garnished and because I am disabled and I cannot work I was forced into Bankruptcy by the State of Maryland. Foreclosure of my Primary Residence. OCSE Then filed for Child

Support Arrears based upon Using my Veterans Service Connected Compensation Benefits to Calculate an award.

Bankruptcy Case NO: 16-1-6536-WIL, OCSE case NO:890151624, Prince George Circuit Court Maryland Foreclosure Case # CAEF15-25475.

145. Punitive damages in an amount of (FIFTY MILLION DOLLARS) and,

146. Such other relief as may be just and proper.

Dated: May 3~~rd~~ 1st, 2017

**Name KELVIN DARREN REESE**
9811 GLENKIRK WAY
MITCHELLVILLE, MARYLAND 20721-2985
(240)-330-0921
k.darren.reese@gmail.com